UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| NATALIE WALLER ET AL., ) | |
| Individually and on behalf of all others ) | |
| similarly situated, ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 20-cv-1080-JES-JEH |
| ) | |
| AFNI, Inc., ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION

This matter is now before the Court on Plaintiffs' Motion [6] For Conditional Class Certification and Court-Supervised Notice To Putative Class Members Pursuant To 29 U.S.C. § 216(B). Defendant filed a Response [24] to which Plaintiffs filed a Reply [26]. For the reason set forth below, the Motion to Conditionally Certify the Class is GRANTED.

### BACKGROUND

Plaintiffs Natalie Waller, Justin Racer, Alexandria Barleycorn, and La'Quenza Frett (collectively, "Plaintiffs") and potential collective action members include current and former hourly, non-exempt Call-Center employees who worked for AFNI in all four states where AFNI operates. Doc. 7, at 8. Defendant AFNI is a privately held company that operates call centers in the Midwest of the United States. Doc. 11, at 8-9; Doc. 24, at 2. Defendant's corporate headquarters is located in Bloomington, Illinois and it has five production sites in Illinois, Arizona, Kentucky, and Alabama. Doc. 24, at 2.

On February 27, 2020, Plaintiffs filed this action under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 *et seq.*, and various state law claims as class actions pursuant to

Federal Rule of Civil Procedure 23.[1] Doc. 1, at 1-2. In the instant Motion, Plaintiffs ask this Court to conditionally certify the following class under FLSA section 216(b): "All hourly call-center employees who were employed by AFNI, Inc., at any time from February 27, 2017 through the final disposition of this matter." Doc. 7, at 12. Plaintiffs' definition of "Hourly Call-Center Employee" includes "any hourly employee who worked for AFNI in a call center, who clocked in through the computer, and who's job duties included taking outbound and/or inbound phone calls on behalf of AFNI and/or its business clients and their customers." *Id.* at 1. Among other requests for relief, Plaintiffs seek damages for AFNI's failure to pay compensation for all hours worked and AFNI's failure to pay overtime compensation for all hours worked in excess of forty hours per workweek at the rates required by the FLSA. Doc. 1, at 13.

## LEGAL STANDARD

The FLSA allows employees to bring FLSA claims against an employer through a "collective action" on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b). This type of collective of action differs from a Fed. R. Civ. P. 23 class action in that party plaintiffs must affirmatively *opt-in* to the suit via written consent to the court. *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010). *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). A district court has wide discretion to determine how collective actions should proceed. *Alvarez*, 605 F.3d at 449 (citing *Hoffmann–La Roche v. Sperling*, 493 U.S. 165, 171 (1989)). Although the Seventh Circuit Court of Appeals has not expressly adopted it, district courts in this Circuit apply a two-step process to collective FLSA actions. *Shiner v. Select Comfort Corp.*, No. 09 C 2630, 2009

---

[1] At this time, Plaintiffs only move for conditional class certification under the FLSA, not Fed. R. Civ. P. 23. Doc. 7, at 3.

WL 4884166, at *2 (N.D. Ill. Dec. 9, 2009); *Smith v. Alamo Claim Serv.*, No. 13-1481, 2015 WL 13594414, at *2 (C.D. Ill. Mar. 31, 2015); *Woods v. Club Cabaret, Inc.*, 140 F. Supp. 3d 775, 780 (C.D. Ill. 2015); *North v. Bd. of Trs. of Ill. State Univ.*, 676 F. Supp. 2d 690, 694 (C.D. Ill. 2009).

This first step is often referred to as the "conditional certification stage" or "notice stage," wherein the "plaintiff must make a minimal showing that individuals in the potential class are similarly situated." *Brashier v. Quincy Prop., LLC*, No. 3:17-CV-3022, 2018 WL 1934069 (C.D. Ill. Apr. 24, 2018). Plaintiff must make a "modest factual showing" that defendant had a common policy or plan that violated the law and affected the potential class members. *Brashier*, 2018 WL 1934069, at *5; *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 15–CF–10447, 2016 WL 1043429, at *2 (N.D. Ill. March 16, 2016); *Shiner*, 2009 WL 4884166, at *2. Under this step, the court does not consider the merits of plaintiffs' allegations or assess the credibility of witnesses. *Nehmelman v. Penn National Gaming, Inc*, 822 F.Supp.2d 745, 751 (N.D.Ill.2011); *Woods*, 140 F. Supp. 3d at 780. The court proceeds to the second step after the opt-in period and completion of discovery. *Brashier*, 2018 WL 1934069, at *5. At that time, a court will determine whether there is a "sufficient similarity" between named plaintiffs and the plaintiffs that opted in, such that the action should proceed on a collective basis. *Curless v. Great Am. Real Food Fast, Inc.*, 280 F.R.D. 429, 433 (S.D. Ill. 2012). If a sufficient similarity does not exist, then the court can dismiss the opt-in plaintiffs. *Brashier*, 2018 WL 1934069, at *5. At this point, "the defendant can move to decertify the class or divide the class into subclasses." *Brashier*, 2018 WL 1934069, at *5 (citing *Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F. Supp. 2d 745, 751 (N.D. Ill. 2011)).

## DISCUSSION

In their Motion, Plaintiffs argue the class should be conditionally certified pursuant to 29 U.S.C. § 216(b) because plaintiffs and the Putative Class members are similarly situated. *See* Doc. 7. In its Response, Defendant opposes the certification and court-supervised notice. *See* Doc. 26. Alternatively, Defendant argues if the Court grants[2] a conditional class certification, then it should alter Plaintiffs' proposed notice and process. Doc. 24, at 10. In their Reply, Plaintiffs object to Defendant's request to modify the proposed notice. Doc. 26, at 5. The Court will address these arguments in turn.

### A. Conditional Class Certification

When a court is making its determination under step one, parties typically have not engaged in much discovery at this point. *Brashier*, 2018 WL 1934069, at *5. Therefore, "[c]ourts use a lenient interpretation of the term similarly situated in determining whether a plaintiff meets this burden." *Russell v. Illinois Bell Tel. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008) (internal citations and quotations omitted). Plaintiffs should show "some factual nexus" connecting to the potential plaintiffs that were also victims of the defendant's unlawful practice. *Berndt v. Cleary Bldg. Corp.*, No. 11–cv–791–wmc, 2013 WL 3287599, at *6 (W.D. Wis. Jan. 25, 2013); *Brashier*, 2018 WL 1934069, at *5. The similarity does not have to be related to job duties, but it must be more than a simple claim that "the FLSA has been violated." *Molina v. First Line Solutions LLC*, 566 F. Supp. 2d 770, 786-87 (N.D. Ill. 2007).

Here, Plaintiffs argue they have met their burden to make a modest factual showing required for conditional certification at the notice stage. Plaintiffs and the Putative Class purportedly include current and former hourly call-center employees that were victim to an unlawful company-wide policy that forces hourly employees to perform unpaid work regardless

---

[2] Defendant concedes if Plaintiff's motion is granted then court-authorized notice is necessary. Doc. 24, at 10.

of call center location, department, or position. Doc. 7, at 5-7. This policy applies to all hourly call-center employees in all AFNI locations i.e. Illinois, Arizona, Kentucky, and Alabama. *Id.* at 2. Specifically, AFNI allegedly requires hourly call-center employees to arrive at work prior to their scheduled start time to log into their computer systems, log into necessary programs, and read company policy update emails, but it does not compensate employees for this time spent. *Id.* at 1-2, 4. Plaintiffs highlight their submission of fourteen declarations from employees who worked at AFNI locations across four states. *Id.* at 5; *See* Doc. 7-1, at Exs. 1-14.[3] Plaintiffs contend all of these AFNI employees stated they had to abide by the same company-wide policy. Doc. 7, at 5.

Defendant argues the proposed class membership is "not similarly situated" because Plaintiffs are attacking one method of timekeeping but lumping together all hourly employees regardless of how the employee clocked in for work. Doc. 24, at 8. It highlights that employees can clock in through various methods: "choose to use wall clocks, CISCO phones located throughout the facilities, in training rooms, and at each specific desk, or SharePoint on their computers." *Id*. Defendant also argues the proposed class membership lack similarity for a class approach. It notes the proposed class includes individuals with fundamentally different job roles and different job responsibilities including "unique start-of-shift procedures." *Id.* at 9. Defendant also argues that its three lines of business were subject to different policies regarding their start-of-shift procedures. *Id.* at 2. For example, customer service representatives ("CSRs") directly communicate with client customers via phone calls, online chats, and social media; receivables management teams ("RMs") resolve unpaid debt issues with customers; and subrogation and arbitration teams ("Subros") resolve auto and property claims with insurance companies and

---

[3] Due to the lack of pagination in Plaintiffs' exhibit, the Court refers to the declarations attached to Plaintiffs' Motion as Doc. 7-1, at Ex. _____.

5

uninsured individuals. *Id.* at 9. Only CSRs use the "call ready" status. *Id*. In their Reply, Plaintiffs' reiterated "all three lines of business across all six facilities Defendant identified are represented in this action by the seventy-one (71) Plaintiffs currently on file." Doc. 26, at 3-4.

Even considering that the Putative Class may include members with different roles or different start-of-shift procedures, contrary to Defendant's argument, there is evidence that the potential class members are similarly situated. For conditional certification purposes, a class can be similar under the FLSA even if the potential members have distinct job titles, functions, or pay. *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848-9 (N.D. Ill. 2008) (conditionally certifying a class of almost 4,708 pharmaceutical representatives throughout the U.S. because they share the "same essential responsibility: calling on physicians and promoting Defendant's pharmaceutical products" and "were subject to a common policy classifying them as exempt.) (citing *Perry v. Nat'l City Mtge.*, Inc., No. 05-891, 2007 WL 1810472, *3-4 (S.D.Ill. June 21, 2007) (certifying a class of 5,500 loan originators despite varying job duties because the potential class had the "same overall mission"); *Garza v. CTA*, No. 00-438, 2001 WL 503036, at *3 (N.D.Ill. May 8, 2001) ("That the plaintiffs and other potential plaintiffs may have different jobs and earn different amounts of money does not mean that they are not operating under the same policies that allegedly entitle them to overtime pay.") (internal quotations omitted)).

Here, employees from different job titles and varying duties share similarities: they interacted with ANFI's customers or clients via call-centers regardless of the subject of such calls and they clocked in through some mechanism that was processed by Kronos. In its Response, Defendant affirmed "Afni tracks employees' time worked through the Kronos time keeping system" *See* Doc. 24, at 3 (citing "Kendle Decl. ¶ 8; Vandegraft Decl. ¶ 8; Bernal ¶ 6; Fogel ¶ 3; Eickmeyer ¶¶ 4, 11"). Defendant also confirmed that CSR, RMs, and Subros all clock into

Kronos, whether that be by wall clocks, CISCO phones, or computers, and all of them are trained to use Kronos. Doc. 24, at 4. Regardless of whether the phrase "call ready" or something else was used, Plaintiffs allege a factual nexus focusing on the fact that hourly employees were required to perform pre-shift off-the clock work and this practice was/is common throughout AFNI locations. Thereby, the Plaintiffs and the Putative Class suffered the same FLSA violation. Plaintiffs also claim that employees are subject to discipline if they clock in prior to their start time or they are not ready and on the phone at the start of their shift time, which goes to the common policy. Doc. 7, at 7.

Further, "[t]he mere potential that individual issues may predominate after further discovery does not preclude conditional certification of the class." *Jirak*, Inc., 566 F. Supp. 2d at 850 (citing *Heckler v. DK Funding*, 502 F.Supp.2d 777, 780-81 (N.D. Ill. 2007); *Gambo v. Lucent Tech.*, Inc., No. 05-3701, 2005 WL 3542485, at *4 (N.D.Ill. Dec. 22, 2005)). It is more appropriate to decide such issue at stage two when "it is known who the class will consist of, and after some of the factual issues can be fleshed out in discovery." *Id*. Ultimately, Defendant's arguments seem to suggest that class should be divided into subclasses; such issue, if raised, is better suit in an analysis at stage two.

As discussed below, the Court finds Plaintiffs have met their initial burden to show Plaintiffs and the Putative Class are similarly situated. Plaintiffs submitted declarations from fourteen AFNI employees[4] in support of their Motion. If a plaintiff provides an affidavit, declaration, or other support beyond allegations, it is typically sufficient to overcome the burden in step one of showing that other similarly situated employees exist. *Molina*, 566 F.Supp.2d at

---

[4] Such declarations include thirteen former employees and one current employee (as of March 10, 2020). For the ease of clarity, the Court uses the past tense in reference to all of the declarants' statements regarding their work, even though one declarant continues to work at AFNI.

786; *Smith*, 2015 WL 13594414, at *4. *See also Lane v. Atlas Roofing Corp.*, No. 4:11-CV-04066-SLD, 2012 WL 2862462, at *2 (C.D. Ill. July 11, 2012) (granting plaintiff's unopposed motion for conditional class certification where "[p]laintiffs submitted affidavits from five employees, each stating that the employee was not paid for work performed during unpaid lunch breaks and that the employee was told to remain on the company premises during those lunch breaks[,]" and each employee referred to other employees or co-workers that were subjected to the same policies). Here, each declarant stated the following regarding his or her work at AFNI: he or she was an hourly employee; he or she worked in one of AFNI's call centers in either Alabama, Arizona, Illinois, or Kentucky; AFNI required him or her to arrive early to each shift to complete various pre-shift tasks; he or she was scheduled to work and did work around forty hours each workweek; he or she regularly worked time in excess of forty hours in a workweek performing pre-shift tasks; and despite working additional time performing pre-shift tasks, he or she was not paid for the off-the-clock work as an hourly employee. Doc. 7-1, at Exs. 1-14, ¶¶ 2, 7, 11, 13, 14, 15. Furthermore, each declarant refers to other employees who were subject to the same policies and that all hourly call-center employees across the country follow the same policies. *Id.* at Exs. 1-14, ¶¶ 16, 17. Plaintiff Walker declared that in her roles as a CSR and Subro, the policies regarding her start time were the same. Doc. 26, at 3-4. As to AFNI's company policies, each declarant stated AFNI had a policy requiring hourly call center employees to arrive prior to his or her shift; AFNI enforced its policy prohibiting employees from clocking-in prior to completing pre-shift off-the-clock tasks; and AFNI knew employees were working off-the-clock but it did not pay them. *Id.* at Exs. 1-14, ¶¶ 7, 9, 10.

At the outset of Defendant's argument in its Response, it argues "Afni does not maintain a policy requiring its employees to perform work off the clock." Doc. 24, at 7. In addition,

Defendant submitted declarations refuting Plaintiffs' claim that employees were required to work off-the-clock. *See* Docs. 24-1, at 2; 24-4, at 2; 24-5, at 2. However, as Plaintiffs pointed out, Defendant's argument requests the Court to consider the merits of Plaintiffs' claims. It is not proper for a court to judge the credibility of declarants or resolve factual disputes at this stage. *Anyere v. Wells Fargo, Co.*, No. 09 C 2769, 2010 WL 1542180, at *3 (N.D. Ill. Apr. 12, 2010); *Barrett v. NorthShore Univ. Healthsystem*, No. 1:17-CV-09088, 2019 WL 4412726, at *4 (N.D. Ill. Sept. 16, 2019); *Smith*, 2015 WL 13594414, at *4. Therefore, the Court declines to address the Parties' competing declarations at this time.

However, Defendant may still challenge the merits of Plaintiffs' claims at the second stage of this collective action and "whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on collective basis." *Heckler*, 502 F.Supp.2d at 779. At that point, the Court can revoke the conditional certification if such similarities do not exist. *Id*. In finding that Plaintiffs have met their initial burden, the Court turns to the Parties arguments regarding Notice and Process.

### B. Plaintiffs' Proposed Notice and Process

"[T]rial courts have discretion to monitor the preparation and distribution of notice to potential plaintiffs[.]" *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049 (7th Cir. 2020). "But courts 'must be scrupulous to respect judicial neutrality, avoiding even the appearance of endorsing the action's merits.'" *Id*. (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989)). Plaintiffs ask this Court to authorize Plaintiffs' counsel to take various actions related the Notice and Consent: notice by mail, e-mail, and text-message; reminder notices by mail, e-mail, and text messages; and follow-up to calls to Putative Class Members. Doc. 6-1, at 3. They also request an order that Defendant posts copy of the Notice and Consents at all job sites and a ninety-day opt-

in period. Doc. 6-1, at 3. Defendant objects to Plaintiffs' proposed notice on three main grounds: (1) it opposes allowing notice via text messages; (2) it rejects Plaintiffs' request for the Court to allow reminder notices; and (3) it finds a 90-day opt-in period is excessive and the Court should order a 45-day period. Additionally, Defendant briefly notes "on-site postings, and follow up telephone calls[5] are excessive and unnecessary." Doc. 24, at 10.

### 1. Method of Notice

Plaintiffs request the Court to allow notice[6] to be sent via U.S. mail, e-mail, and text message. Doc. 7, at 14. Rather, Defendant objects to text messages; rather, it proposes postal and electronic mail as the only means of Notice. Doc. 24, at 10. In support of its argument that text messages would be excessive, Defendant quotes various decisions in this Circuit, which are seemingly unsupportive of text messages notice (quoting *Slaughter v. Caidan Mgmt. Co., LLC*, 317 F. Supp. 3d 981, 994 (N.D. Ill. 2018); *Muir v. Guardian Heating & Cooling Services, Inc.*, No. 16 C 9755, 2017 WL 959028, at *10 (N.D. Ill. Mar. 13, 2017)). Doc. 24, at 11. Defendant argues that text message has typically been approved for notice in cases that included a transient work force or where the employer did not have addresses or emails for its workforce. Doc. 24, at 11. It claims these cases are distinguished because Defendant has the contact information for the proposed class. Doc. 24, at 11-12. In their Reply to Defendant's opposition to text message notices, Plaintiffs argue text message communication is appropriate because Plaintiffs submitted declarations showing "members of the Putative Class have moved since their employment with

---

[5] The Court will address these issues last as the Parties did not provide any briefing on these issues aside from Defendant's brief notation.

[6] Plaintiffs request that the Putative Class Members be given the option to sign a consent form electronically by clicking on a link in an encrypted email or text-message specific to that person. Doc. 7, at 14. Plaintiffs confirm the service would then take the person to a website where he or she can review the document they are signing, click a box confirming he or she read and understood the consent form, and it will allow the person to add information such as a name and date. Doc. 7, at 14. Defendant does not contest this method of consent and the Court sees no reason to prohibit this consent method; therefore, it will be authorized.

Defendant, do not regularly check emails, and communicated with Defendant over the phone, including communication via text message. Doc. 26, at 4 (citing Doc. 7-1, Exs. 1-14).

The Court finds Plaintiffs' support for text message notice persuasive. *See* Doc. 26, at 7 ("There is no credible reason why notice should not be provided by email or *text message*, especially given the broad remedial purpose of the FLSA." *Millin v. Brooklyn Born Chocolate, LLC*, No. 19CV3346ENVRER, 2020 WL 2198125, at *3 (E.D.N.Y. May 6, 2020) (rejecting defendant's objection to disseminating notice by email and text message because it disregards the reality of Americans' daily lives) (emphasis added)); ("[T]ext message notice is appropriate . . . The reality of modern-day life is that some people never open their first-class mail and others routinely ignore their emails. Most folks, however, check their text messages regularly (or constantly)." *Lawrence v. A-1 Cleaning & Septic Sys., LLC*, No. 4:19-CV-03526, 2020 WL 2042323, at *5 (S.D. Tex. Apr. 28, 2020) (authorizing mail, email, and text message notice). In an increasingly mobile society, especially in 2020, electronic means of communication have become much more prevalent. Many people throughout the U.S. communicate and check their text messages much more often than traditional mail or even email, which may include multiple accounts (i.e. an exclusive spam mail account, a personal email, a school email, and a work email etc.). While text message notice has not been routinely granted by courts yet, it has been allowed on a case-by-case basis. *See e.g., Brashier*, 2018 WL 1934069, at *6 ("While notice by text message is not uniformly permitted by the courts, this Court finds that notice by text message is appropriate in this case."). Further, there is less of a risk that potential class members would find this text message notice to be spam because it relates to a company that an individual has worked for in the past three years or so, or may continue to be working. This is different than a text message for a class action suit related to ticket that a person may have purchased years ago

11

from Ticketmaster or one's Facebook usage almost a decade ago. The Court finds Plaintiffs have shown support through their declarations as to why text message notice is appropriate: the defendant often communicated with Plaintiffs and the Putative Class via calls and texts; hourly employees have moved since their employment with AFNI; and many hourly employees do not check their email often; rather, texting is the best way to reach them. *See* Doc. 26, at 4.

### 2. Reminder Notices

Plaintiffs request the Court to authorize Plaintiffs' counsel to send a reminder notice halfway through the opt-in period. Doc. 7, at 15. Defendant implies that a reminder notice could disrupt "judicial neutrality." Doc. 24, at 10 (citing *Schroeder v. Humana Inc.*, No. 12-C-0137, 2012 WL 5931886, at *9 (E.D. Wis. Nov. 27, 2012); *Hudgins v. Total Quality Logistics*, LLC, No. 16 C 7331, 2016 WL 7426135, at *6 (N.D. Ill. Dec. 23, 2016) ('A reminder notice could be interpreted as encouragement by the Court to join the lawsuit.'). Defendant does not point to any content of the proposed notice that could impede judicial neutrality, but rather the existence of the reminder notice itself.

It is Plaintiffs' position that "reminder notices merely acknowledge that people lead busy lives and may forget about returning consent forms with a seemingly distant deadline[,]" and courts have wide discretion to grant them. Doc. 26, at 5 (quoting *Knox v. Jones Gr*p., 208 F. Supp. 3d 954, 964 (S.D. Ind. 2016), *on reconsideration in part*, No. 115CV01738SEBTAB, 2016 WL 6083526 (S.D. Ind. Oct. 18, 2016) and citing *Lucas v. JJ's of Macomb, Inc*., No. 16-CV-3328, 2019 WL 993657, at *6 (C.D. Ill. Feb. 8, 2019); *Boltinghouse v. Abbott Labs., Inc*., 196 F. Supp. 3d 838, 844 (N.D. Ill. 2016)). Similar to the Southern District Court of Indiana in *Knox*, "[this] Court is unconvinced that any harm will result from potential class members being

informed of their rights twice. Deadline reminders are commonplace and will not appear to endorse the merits of the case. Therefore, Plaintiffs' request to send a reminder notice is approved." *See* 208 F. Supp. 3d at 964–65.

### 3. Authorized Opt-in Period

Plaintiffs request this Court to authorize a 90-day opt-in period. Doc. 7, at 15. Defendant objects to the proposed period because it is unnecessary and conflicts with Plaintiffs' allegations. Doc. 24, at 12. It notes Plaintiffs explained 'the recovery for each Putative Class Member is eroding daily because the statute of limitations does not toll until they file their consent forms.' *Id.* (quoting Doc. 7, at 2). Therefore, a 45-day period would "prevent the alleged further erosion of claims." *Id.* at 12. While the Court understands Defendant's point that Plaintiffs noted the limitation period continues to run until potential plaintiffs opt-in, the Court sees no basis to shorten the 90-day opt-in period Plaintiffs request. A district court's broad discretion in regulating notice sent to potential class members extends to the length of an opt-in period. *Woods*, 140 F. Supp. 3d at 783–84. Courts routinely approve 90–day opt-in periods in collective actions, including FLSA claims. *Id.* Accordingly, Defendant's request to shorten Plaintiff's proposed 90-day notice period is denied.

### 4. Additional Notice

Aside from stating on-site postings and follow-up telephone calls are "excessive and unnecessary," Defendant does not articulate *why* on-site postings or follow up telephone calls are excessive and unnecessary. The Court will infer "follow-up calls" refers to the Plaintiff's Proposed Order, which requests the Court order "Defendant shall post a copy of the Notice and Consent Form at all job sites." Doc. 6-1, at 3. It is not the Court's job to parse through caselaw to make arguments for litigants. However, some courts, including this District, have held a

duplicative on-site job posting is unnecessary unless plaintiffs show why the current form of notice is ineffective. *See e.g.*, *Lane*, 2012 WL 2862462, at *4 ("Since there is no showing that mail notice is insufficient, it is intrusive and unnecessary to order posting of notice on Defendant's premises."); Courts have addressed the issue of posting a notice on-site even if the parties did not brief the issue. *See Howard v. Securitas Sec. Servs., USA Inc.*, No. 08 C 2746, 2009 WL 140126, at *9 (N.D. Ill. Jan. 20, 2009)("The court authorizes notice to be mailed to the putative class; however, it will not order Securitas to post the notice in its branches as, absent evidence that the mailing of notices is ineffective, such a method of notice is unnecessary and overly intrusive"); *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, No. 08-C-488, 2008 WL 5263750, at *6 (E.D. Wis. Dec. 18, 2008) ("Waupaca also objects to being required to post the notice in its six plants. Because it is unclear why transmitting the notice by first class mail and publishing it through newspapers would be insufficient, I will not order Waupaca to post the notice in its plants.").

Other courts have approved on-site posting where there was concerning regarding the timely notice to potential class members or the burden on the defendant was minimal and there was a high-risk defendant would not provide the contact information for all potential class members. *See Barreda v. Prospect Airport Servs. Inc.*, No. 08 C 3239, 2008 WL 7431262, at *4 (N.D.Ill.2008) (authorizing an unopposed motion for duplicate notice on where due to statute of limitations concerns); *Adams v. Inter–Con Security Sys.*, Inc., 242 F.R.D. 530, 541–42, (N.D.Cal.2007) (allowing notice by mail and on-site posting where there may have been errors in the defendant's contact list of potential collective members); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 481 (E.D.Cal.2006) (same).

However, in some of those cases, posting of notice was authorized where mailing notice was the only form of notice, the work involved less sedentary work such drivers in transportation companies, and more often, posting of notice was authorized where there was a concern that the defendant would or could not disclose the contact information for all potential class members. Plaintiffs have failed to argue why an on-site posting is necessary or why notice via text message, email, U.S. mail may be ineffective, therefore the Court will deny their request. "If Plaintiffs' counsel learns of evidence that the authorized methods of issuing notice are ineffective and has reason to believe that [on-site job postings] will address that deficiency, counsel should so inform the Court and this issue can be revisited." *Slaughter*, 317 F. Supp. 3d at 992-4 (noting that while the court chose not authorize notice via text message at the time, the plaintiffs could re-raise the issue in a later motion "if warranted, to address notices that are undeliverable.").

Additionally, the Court finds it is excessive to authorize Plaintiffs' Counsel "to call Putative Class Members to ensure the Consent forms were received" in addition to allowing a 45-day reminder notice by mail, email, and text. Further, Plaintiffs submitted declarations stating that texting, not calling, was the best way to reach hourly call center employees. *See* Doc. 7-1, Exs. 1-14, ¶ 20.

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion [6] for Conditional Class Certification is GRANTED. The attached document details the Court's Order.

Signed on this 13th day of November, 2020.

                                                                 s/James E. Shadid
                                                                 James E. Shadid
                                                                 United States District Judge